PAUL KORDIAK v. HARRY HOLMGREN AND ANOTHER.[1]

December 5, 1947.

No. 34,424.

*Gordon C. Peterson, Burr B. Markham,* and *William Seltz,* for appellant.

*Freeman & King* and *Robert L. Hoppe,* for respondents.

JULIUS J. OLSON, JUSTICE.

On the evening of October 20, 1945, defendant Harry Holmgren, a boy of 16 years, obtained his father's permission to use the family car. With two other boys of about the same age, they drove to a dance at Columbia Heights high school. Shortly after midnight they drove to a tavern in North St. Paul. Harry was the driver on both trips. On the trip home from North St. Paul in the Holmgren car, the same two boys, with two girls of about the same age, met with an accident at or near the intersection of Cleveland avenue and highway No. 36 north of St. Paul. After one or two cars had passed Harry's car, he turned to the left to pass the car ahead of him. As he did so, the driver of that car also swung to the left, forcing Harry's car off the road and into the ditch on the left side of the highway. Harry's car struck a culvert or some other obstruction and rolled over three or four times. Plaintiff's intestate, Edward Kordiak, a passenger in the Holmgren car, received fatal injuries. Edward's father, as administrator of his estate, brought this action under the death-by-wrongful-act statute. There was a verdict for defendants. Plaintiff appeals from an order denying his motion for a new trial and from the judgment.

By his own testimony, Harry's operation of the Holmgren car at 50 to 60 miles an hour after midnight was sufficient to take the case to the jury on the issue of his negligence.

Our consideration and determination of the case, however, hinges upon that part of the trial court's instruction to which plaintiff objected. It reads:

"If you find from a fair preponderance of the evidence that the deceased, Edward Kordiak, failed to exercise such care as an ordinarily prudent person would have exercised under the same or

similar circumstances *in respect to riding in an automobile driven by a person not fit to drive by reason of intoxicating liquor, failing to warn or restrain the driver, or in any other respect,* you will find him negligent, and if you further find such negligence to have contributed in any degree as a cause to his death you will find him guilty of contributory negligence and return a verdict in favor of the defendants." (Italics supplied.)

The question of Edward's alleged contributory negligence as submitted by the trial court is of vital importance. As a matter of fact, we are persuaded, as shown by this record, that Edward's actions and conduct do not permit a finding of negligence on his part in any way contributing to the cause of the accident. To demonstrate this conclusion, some additional facts should be stated.

During the early evening of October 20, 1945, Harry, Edward, and another boy drove from Minneapolis to Columbia Heights to participate in a high school dance. That ended about midnight. These boys, with three girls, next drove to a tavern and dance hall in North St. Paul. About 1:30 a.m., they started home, but only two girls were with them then, the third having procured a ride with another driver. Harry and Gloria Ladd occupied the front seat, and Edward, Beverly Nicol, and the third boy (Floyd McNosky) occupied the back seat. On their way to the high school dance, the boys contributed enough money to purchase a bottle of whiskey. Harry testified that he took only "a little bit" of a drink before they got to the dance at Columbia Heights, and that he did not later drink any intoxicating liquor. That the bottle was given to the two other boys, in whose possession it remained until its contents were consumed, is not disputed. There is no testimony contradicting that of Harry. Instead, one of the girls in the party testified that he appeared normal in manner and speech and that he was not under the influence of liquor in any degree.

As to what took place on the way back from the tavern, Beverly Nicol testified that "Gloria [Ladd] told Harry to slow down a little because it [the speed] made her nervous." Gloria testified:

"Q. Now, when you asked him to slow down he obeyed, didn't he?

"A. Yes.

"Q. He slowed down?

"A. The first time, yes.

"Q. And then after Ed asked him to slow down he obeyed again, didn't he?

"A. Well, the Kordiak boy just sort of chimed in while I asked him to slow down. He said, 'Yes, go slow, we have plenty of time.'

"Q. In other words, you and he made the request at the same time?

"A. That's right.

"Q. And he did slow down, didn't he?

"A. That's right.

"Q. And he slowed down to a speed that you were satisfied with?

"A. Well, yes."

The number of high school youngsters in the crowd was estimated at 50 to 75. There was a long string of cars going to and returning from the side trip to the North St. Paul tavern. As to what took place just before the accident, Gloria testified:

"Q. Did you have any conversation with Harry immediately before the accident?

"A. Well, when we first left that place, that tavern or whatever it was after the party we drove along, and I asked him one time to slow down, and he did, and then the Kordiak boy leaned forward, and he also asked him if he wouldn't slow down a little, and he did slow down, and we rode along like that for a while. He wasn't going very fast, and then he increased his speed again and started going fast. There was some other cars, I don't know who the other cars were, but there were a few other cars that came along and passed him. Then he started going fast again."

The distance from the tavern to the place of the accident is only about six miles, so the time consumed amounted to only a few minutes. To require plaintiff to accept an adverse verdict upon

the theory submitted by the trial court would be most unfair. Rather, we should apply the principle so fully and accurately stated in the recent case of Goldberg v. Cook, 206 Minn. 450, 457, 289 N. W. 512, 515. There, plaintiff was not driving the car and had no control or right of control. She committed no affirmative act that caused or contributed to the accident. She stood charged with omission to act, but the evidence failed to show any duty to act. So far as appeared, she was not aware of any danger, and there was nothing to warn her that danger was imminent until the accident happened, when it was impossible for her to do anything to prevent it. The negligence of the driver was not imputable to plaintiff, and the evidence failed to show any contributory negligence on her part. So here.

Of like import is Carlson v. Naddy, 181 Minn. 180, 181, 232 N. W. 3, 4, from which we quote:

"* * * An instruction was requested for defendant that 'contributory negligence would be such negligence as contributed in the slightest degree to the injury.' That instruction was properly refused. It is objectionable for the reasons stated in [the Minnesota cases cited]. A 'correct statement is that the plaintiff's negligence, to prevent a recovery, must contribute proximately to the injury as a cause.' * * * The question is not as to the amount of a plaintiff's negligence, if any, but whether, if present at all, it contributed as a cause proximately to the result."

Defendants rely upon Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637. There, plaintiff had been riding with defendant driver many hours at speeds of 70 to 80 miles per hour. Plaintiff had repeatedly protested the high rate of speed, but to no avail. Instead, defendant driver bragged (213 Minn. 351, 6 N. W. [2d] 639), "The car can go easily 80 miles, that is nothing for this car." As he passed another car, he remarked, "Watch me make that car go backwards." Defendant was traveling at that rate of speed when the accident occurred. We there held that a jury issue was presented as to whether plaintiff should have taken steps for his own

safety in addition to his ineffective protests. That case differs from the situation here, in that the evidence there clearly showed plaintiff's knowledge of the driver's high and dangerous rate of speed. Danger must have been plainly apparent to him. Such is not the situation here.

We conclude that the trial court's instruction on the question of decedent's contributory negligence was erroneous and that a new trial should be had. It is so ordered.

Reversed.

