ANTON KAPLA v. ELMER LEHTI AND ANOTHER.[1]

January 16, 1948.

No. 34,491.

[1]Reported in 30 N. W. (2d) 685.

*Stone, Manthey & Carey,* for appellant.

*I. R. Galob,* for respondent.

PETERSON, JUSTICE.

This appeal is from the order denying defendant Elmer Lehti's motion in the alternative for judgment notwithstanding the verdict

or a new trial after verdict for plaintiff against both defendants, Lehti and Richard Salo.

The questions raised here are: (1) Whether, in an action for injuries sustained by a passenger in an automobile overtaking and passing two other automobiles as the result of a head-on collision between the passing automobile and one oncoming from the opposite direction alleged to have been caused by the concurrent negligence of the drivers of both cars, the evidence presents a fact question for the jury, where it shows that when the overtaking car attempted to pass the others it appeared, and in fact it was, safe to do so; that passing was prevented by the more forward of the overtaken cars increasing its speed; that while abreast of that car the oncoming car suddenly appeared in the lane of travel of the passing car and approached it at a high rate of speed; and that the passenger was aware of no danger in attempting to pass until the oncoming car was close, when, although he warned the driver of the passing car of the approach of the oncoming car, there was nothing he could do to prevent the collision; (2) whether, where the evidence discloses a fact situation such as disclosed in the preceding question, and, in addition, that the oncoming car was going at a speed of about 60 miles per hour, and that the driver of the oncoming car could have seen the passing car about 1,400 feet away when it was attempting to pass the other cars, but did not see it until he was about 60 feet distant from it, and did not attempt to stop or turn aside, the evidence supports a finding that the driver of the oncoming car was negligent; (3) whether testimony that an automobile which had been driven at a speed of 40 miles per hour stopped within a distance of two feet is incredible, where there is other evidence showing that the driver first reduced his speed so as to enable him to make such a stop; and (4) whether an instruction to the effect that both defendants were liable if their negligence contributed in *some degree* toward the collision was objectionable as permitting recovery for *slight negligence,* where the instruction also stated that negligence is the failure to exercise due care and that

there is no liability for negligence unless it was "a direct or proximate cause of the injuries complained of."

The facts from which these questions emerge are not entirely clear, but we think we can state them with such accuracy that the parties cannot complain, in view of the fact that they failed to furnish us, as required by Rule V (222 Minn. xxx), with a plat or diagram of the locus to facilitate our understanding of the facts and of the issues involved. We shall not undertake to state all the evidence. In view of the fact that the verdict was in favor of plaintiff, we shall not only state the evidence from the point of view favorable to the verdict, but also only so much thereof as is necessary to make clear the issues between the parties.

Plaintiff was injured in a head-on collision which occurred shortly after four o'clock in the afternoon of November 2, 1945, between the automobile of defendant Salo, in which plaintiff was a passenger, and the automobile of defendant Lehti. The evidence showed that plaintiff was a paid passenger of Salo's, but the case was tried and decided below upon the theory that he was a guest passenger, and we shall so consider the case upon the appeal. The highway on which the accident occurred extends east and west and is varied by numerous curves. On it there is a pavement 18 feet wide, with five-foot shoulders on each side, of which the 2½ feet adjacent to the pavement are surfaced with black top. The shoulders were hard, and the evidence shows that if an automobile was on the left side close to the center line of the pavement an oncoming automobile had room to pass and could do so by driving partly on the pavement and partly on the shoulder. It was snowing, but the snow melted as fast as it fell on the pavement, making it wet. No point is made concerning the atmospheric conditions and the fact that the pavement was wet, except that Lehti contends that because the pavement was wet Salo could not have stopped his car in the manner plaintiff claims he did—a matter to which we shall refer specifically later. Plaintiff and Salo rode in the latter's car from Hibbing to work at a mine some distance west therefrom and back again each day. On the day in question, they quit work about four o'clock

in the afternoon and were going homeward or east toward Hibbing. Lehti, his wife, and brother-in-law lived west of Hibbing. They had gone to the village earlier in the day and were going west on their homeward trip when the accident occurred.

Just prior to the accident, Salo drove up a long hill, at the top of which there is a place known as Perry's Tavern. From Perry's Tavern eastward the road goes down the other side of the hill, making a slight sweeping curve toward the north as it does so. At any place between Perry's Tavern and a point about 400 feet west of where the accident occurred, a distance of about 700 feet, the driver of an automobile proceeding easterly has an unobstructed view for a distance of 1,400 feet. Likewise, an automobile driver coming from the east has a similar view for the same distance. After curving from Perry's Tavern, the road straightens out for about 1,400 feet and then curves again to the north in such a way as to cut off all view beyond.

When Salo got to the top of the hill at Perry's Tavern, he was going at a speed of about 25 miles per hour. He then increased his speed to about 35 or 40 miles an hour and turned into the left lane to pass two automobiles ahead of him going about 20 to 25 miles per hour in the right lane, the most forward of which was about 175 to 200 feet and the other about 150 feet ahead. When Salo turned into the left lane, neither he nor plaintiff saw any automobile, and there was none, oncoming within 1,400 feet visible ahead of them. After Salo passed the forward car nearest to him, the other forward car accelerated its speed so that, while Salo was able to get abreast of it, he was unable to pass it. After endeavoring for some distance to pass this car, Salo saw Lehti about 1,000 feet distant in the same lane of travel coming toward him from the east at a speed of about 60 miles per hour. Thereupon Salo attempted to get back into the right lane, but he was unable to do so because the automobile which he had passed was so close behind him that he could not do so without danger of a collision with it. He drove with part of his car over the center line, slackened his speed, and stopped. Lehti did not see Salo until he was about 60 feet away from him. He neither slack-

ened his speed nor attempted to pass by driving partly on the shoulder, but collided head on with the Salo car, causing the injuries to plaintiff of which he complains. After the collision, Salo's car was facing east, with the front wheels north of the center line of the pavement and the right rear wheel about 2½ feet on the south side thereof. Lehti's car was facing west entirely on the north side of the pavement.

Salo's car was a coupé, and plaintiff sat beside him. Plaintiff testified that he saw nothing unusual until Lehti's car was about 450 feet distant from Salo's coming head on toward them, and that thereupon he warned Salo that the Lehti car was approaching. Lehti concedes that there was nothing "that plaintiff could have done to prevent this accident at the time of the collision, or when Lehti was first seen approaching around the corner." The corner referred to is the curve farthest east above mentioned.

■ We think that the evidence affords no basis for holding plaintiff guilty of contributory negligence, and hence that the trial court was right in refusing to submit to the jury the question whether he was. The question whether a guest passenger in an automobile was guilty of contributory negligence is to be viewed in the light of the respective duties of the guest and of the driver. The duty of driving the automobile and the correlative duty of exercising due care for the safety of a passenger rests primarily upon the driver. A guest should not undertake to drive, for that is the function of the driver. Nor should he direct the driver, except where such action is reasonably necessary for the guest's own safety. Until there is occasion for interference, a guest should desist. A guest is under a duty to take affirmative action for his own protection only when it becomes apparent to him that he can no longer rely on the driver to protect him, as where the driver by his conduct shows that he is incompetent, or is unmindful of or oblivious to dangers of which the guest is aware; and if the guest becomes aware of the danger at a time or under such circumstances that affirmative action by him would not prevent harm, he is not as a matter of law guilty of contributory negligence. Kordiak v. Holmgren, 225 Minn. 134, 30 N. W.

(2d) 16; Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. (2d) 812; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Thorstad v. Doyle, 199 Minn. 543, 273 N. W. 255; Christensen v. Pestorious, 189 Minn. 548, 250 N. W. 363; Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670. As said in Wicker v. North States Const. Co. Inc. 183 Minn. 79, 85, 235 N. W. 630, 632, where we held (in Mrs. Wicker's case) that the question whether plaintiff, a guest passenger, was guilty of contributory negligence properly was not submitted to the jury, it appeared that plaintiff was sitting in the front seat of the automobile and did not see at night "until almost the moment of the crash" an unguarded concrete mixer left on the highway by defendant. We said:

"* * * It was not her duty to discover it [the concrete mixer]. * * *

"The safety of persons in an automobile rests primarily with the driver. Duty in relation thereto falls upon a guest in the car when he is aware that the driver is incompetent or careless or unmindful of some danger known or apparent to the guest. It may also be said that duty requires the guest to act if the driver is not taking proper precaution in approaching a place of danger and, being so aware, fails to warn or admonish the driver or to take proper steps for his own safety."

In the Kordiak case, we followed Goldberg v. Cook, 206 Minn. 450, 289 N. W. 512, which is in accord with the other cases cited, and said (225 Minn. 138, 30 N. W. [2d] 18):

"* * * There [in the Goldberg case], plaintiff was not driving the car and had no control or right of control. She committed no affirmative act that caused or contributed to the accident. She stood charged with omission to act, but the evidence failed to show any duty to act. So far as appeared, she was not aware of any danger, and there was nothing to warn her that danger was imminent until the accident happened, when it was impossible for her to do anything to prevent it. The negligence of the driver was not imputable

to plaintiff, and the evidence failed to show any contributory negligence on her part. So here."

Here, it appeared to plaintiff, as a mere matter of mathematics, that at the time when Salo turned into the left lane to pass the two forward cars it was safe to pass, because of the facts that there was no oncoming traffic in that lane for a distance of at least 1,400 feet and that by increasing his speed to about 40 miles per hour Salo could pass these two cars in a distance of about 600 feet and then safely cut back into the right lane. The situation as it thus appeared was entirely upset by the fact that the more forward car increased its speed, thereby preventing Salo from passing at all, and by the further fact that the other forward car followed close behind the first one and failed to slacken its speed so as to allow sufficient room between them, thereby preventing Salo from cutting in between them and getting out of Lehti's way. The attempt to pass continued while Salo traveled approximately 1,100 feet, during the last 400 feet of which he saw Lehti when he was 1,000 feet distant coming head on at a speed of 60 miles per hour. What could plaintiff have done to prevent the accident? Certainly, he was not required to anticipate at the time Salo turned into the left lane that what then appeared to be a safe passing would be prevented altogether by the increase of speed of the more forward car. At all times while Salo was traveling a distance of 700 feet and attempting to pass the overtaken cars, it continued to appear safe. Then, suddenly, Lehti appeared. True, plaintiff did not see Lehti until he was about 450 feet away. Lehti admits that then plaintiff could have done nothing to prevent the accident. The admission corresponds with the fact. Hence, as a matter of law there was no factual basis for holding that plaintiff was guilty of contributory negligence. That being true, the court properly refused to submit to the jury the question whether plaintiff was guilty of contributory negligence. Kordiak v. Holmgren, 225 Minn. 134, 30 N. W. (2d) 16, *supra;* Guin v. Mastrud, 206 Minn. 382, 288 N. W. 716; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630, *supra.*

Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637, and Farnham v. Pepper, 193 Minn. 222, 258 N. W. 293, cited by appellant, are not in point. In the Hubenette case, the passenger was aware of the fact, while the car in which he was riding traveled about 100 miles, that it was being driven in a dangerous manner, but he did nothing about it. It was a case of risking dangers of which the passenger was aware and which he might have avoided. Of course that is entirely different from the instant case. In the Farnham case, there was evidence showing that the passenger was in the front seat of a car going at excessive speed and saw an approaching car give a signal for a left turn, which the driver of the car in which plaintiff was riding ignored or did not see, and that plaintiff failed to warn the driver of the signal or complain of his speed. That, too, was a case of a passenger being aware of a danger which might have been prevented by him, but was not.

■ Lehti contends that the evidence does not sustain a finding that he was negligent, for the reasons that the collision occurred on his right and Salo's left side of the road; that Salo's view when he attempted to pass the forward cars was obstructed within a distance of 1,400 feet; and that the accident occurred within an instant after Lehti "came into view."

The contention that Salo's view when he attempted to pass the forward cars was obstructed within 1,400 feet is without factual basis. The evidence clearly supports a finding that Salo not only had a clear and unobstructed view for 1,400 feet ahead when he started to pass, but that he also had such a view at every point thereafter until he had proceeded a distance of about 700 feet, or to a point 400 feet west of where the collision occurred.

The fact that the accident occurred on Lehti's right and Salo's left side of the road did not necessarily establish Lehti's freedom from negligence. Under M. S. A. 169.18, subd. 1(1), driving on the left side of the road is expressly authorized "When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement." Here, the evidence clearly presented a fact question as to whether Salo overtook and attempted

to pass the forward cars under the rules applicable to such a situation—that is, that the left side was clearly visible and free from oncoming traffic for sufficient distance ahead to permit the overtaking and passing in safety. § 169.18, subd. 3(5). An affirmative finding by the jury would have established that Salo was not on the *wrong* side of the road, but where, under the circumstances, he had a right to be. Beno v. Peasley, 206 Wis. 237, 239 N. W. 407. Furthermore, the driver of an automobile is required always to exercise due care. Carlson v. Peterson, 205 Minn. 20, 284 N. W. 847. Such a duty rested upon Lehti. As said in 2 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 964:

"The failure of the passing car to use due care will not absolve the driver of an approaching car from all responsibility. He is charged with keeping a lookout, and, when the danger of a collision becomes apparent, he should reduce his speed, have his car under reasonable control, and use ordinary care to avoid an accident. He may not go forward at such a high rate of speed as to make it impossible to prevent a collision, and then lay the entire blame on the passing motorist."

In numerous of our decisions we have held that the driver of an automobile on his own right side of the road must exercise due care to avoid collisions with other vehicles, even with those on his side of the road, and that, while he may assume that an approaching vehicle on his side of the road will turn and get on its right side, he will not be permitted to act on the assumption where the factual basis for it has disappeared, as, for example, where it becomes apparent that the driver on the wrong side of the street either will not or cannot turn back to his right side. The fact that a motorist is on the wrong side of the road will not justify another driver in running him down. Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Schweikert v. Peters Sausage Co. 206 Minn. 596, 289 N. W. 828; Kulla v. E. B. Crabtree Co. 203 Minn. 105, 280 N. W. 16; Turnmire v. Jefferson Transp. Co. 202 Minn. 307, 278 N. W. 159;

Olson v. Byam, 176 Minn. 619, 224 N. W. 256. As said in Hinman v. Gould, 205 Minn. 377, 381, 286 N. W. 364, 366:

"* * * He proceeded headlong to encounter danger coming at him. In head-on as in other collision cases, the question of alleged negligence of the operator of an automobile is one of fact for the jury, where, as here, the evidence shows that he might have avoided the collision by the exercise of due care."

In Rice v. Lowell Buick Co. 229 Mass. 53, 57, 118 N. E. 185, 186, the court held "that, if a man was on the highway where he should not be, that would not authorize another to run him down." The notion that a driver of an automobile may disregard dangers created by the presence of another on his side of the road has never had judicial sanction. In Dentinger v. Uleberg, 171 Minn. 81, 83, 213 N. W. 377, we pointed out that there is no "inflexible rule" against a driver getting on the left side of the road. See, 5 Am. Jur., Automobiles, § 286. The rule is that it is the duty of the driver of an automobile on the right side of the road meeting another automobile on the same side to exercise due care to avoid a collision. In the particular case, it is a fact question whether factual basis for an assumption by the driver on the right side that an oncoming driver on the same side would turn over to the latter's right side has disappeared and whether, under the circumstances, it was necessary and practicable for the former to stop or turn out to avoid a collision and the exercise of due care required him to do so. Hinman v. Gould and Olson v. Byam, *supra;* Zastrow v. Schaumburger, 210 Wis. 116, 245 N. W. 202; 1 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 787.

Finally, the fact that here the accident occurred within a few seconds after Lehti came into view does not excuse him, for the reason that under all the circumstances it was a fact question whether it so occurred because of his negligence. Lehti, as has been said, was not only under a general duty to exercise due care, but was also under specific statutory duties, such as not to drive "at a speed greater than is reasonable and prudent under the conditions

and *having regard to the actual and potential hazards then existing"* (italics supplied) and, "In every event" to so restrict his speed, in compliance with "the duty of all persons to use due care," as to avoid collision with other vehicles on the highway (§ 169.14, subd. 1); and to drive, notwithstanding a speed of 60 miles per hour is permitted outside of municipalities, as here, in the daytime, *"at an appropriate reduced speed"* (italics supplied) while rounding the farthest east curve (§ 169.14, subds. 2 and 3). The duty of exercising due care included as a part thereof that of maintaining a lookout and anticipating the presence of other drivers upon the highway. Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849; 3 Dunnell, Dig. & Supp. §§ 4167e, 4167g; 5 Am. Jur., Automobiles, §§ 167, 168. And, as has been pointed out, it is the duty of the driver on the right side of the road meeting an oncoming car on the same side to exercise due care to avoid a collision and, if necessary and practicable to do so, to stop or turn out.

Here, there can be no doubt of the fact that Lehti did not maintain a proper lookout. He testified that he did not see Salo's car until he was about 60 feet away from it. Under the evidence, the jury was justified in finding that if Lehti had looked after he came around the farthest east curve he would have seen Salo on his side of the road 1,400 feet away attempting to pass the other cars and not succeeding in doing so; that it was apparent that Salo would not turn back to his right side of the road for the reason that under the circumstances then existing he could not do so; that if Lehti proceeded a collision between his car and Salo's was inevitable; and that under the circumstances it was a question of fact whether Lehti was negligent in not stopping, slowing up, or turning out to his right. The evidence is clear that if Lehti had slackened his speed or stopped Salo could have let the second of the cars he was trying to overtake and pass get ahead of him again and could then have turned into his right lane behind it. It is also clear that there was room for Lehti to pass on his right by driving partly on the shoulder, and that he could have done so with safety if he had slackened his speed. In view

of all these considerations, the jury was justified in finding him guilty of negligence.

■ The testimony of both plaintiff and Salo was to the effect that Salo slackened his speed and then stopped on the wet pavement in a space of about two feet. In determining what a witness means, his testimony should be considered as a whole. So considered, there is no basis for Lehti's contention that the testimony is incredible as stating impossible physical facts. Furthermore, because of the fact that the witnesses had difficulty in expressing their views in the English language, they lacked ability to express them with facility. This accounts in part for the statements on which Lehti bases his contention.

■ We do not think that the charge is subject to the objection that it permitted recovery based on slight negligence. The instructions should be considered as a whole in order to arrive at a correct estimate of their legal effect. The court made it clear that negligence is the failure to exercise due care and that negligence is not actionable unless it is a direct or proximate cause of the harm alleged. In effect, the court told the jury that unless Lehti's negligence, if any, directly or proximately caused plaintiff's injuries, plaintiff could not recover at all. Then the court told the jury that if both Salo and Lehti were negligent as so defined both were liable if their negligence contributed in *some degree* toward the happening of the collision. By "some degree," it was clearly meant that the negligence, whatever its degree, must be actionable. Where an injury is caused by the concurrent negligence of several automobile drivers, the negligence of each is deemed a proximate cause of the injury, and each is liable for the resultant damage. Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450; Walker v. Stecher, 219 Minn. 152, 17 N. W. (2d) 317; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Olson v. Neubauer, 211 Minn. 218, 300 N. W. 613; Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484. The fact that the negligence of one defendant contributed more to the accident than that of another does not relieve the latter from liability. Edblad v. Brower, 178 Minn. 465, 227 N. W. 493. We think that the instruction, con-

sidered as a whole, permitted recovery only for such substantial negligence as constituted a proximate cause of the collision, and that, so considered, it was legally correct.

Affirmed.

