SARANETTE FRANK v. ALAN L. STIEGLER AND OTHERS.
SAMUEL LOTT, RESPONDENT.

84 N. W. (2d) 912.

August 16, 1957—No. 37,080.

448

*Henry Halladay, Gregg Orwoll, Charles Frisch,* and *Dorsey, Owen, Barker, Scott & Barber,* for appellants.

*Robins, Davis & Lyons, Solly Robins, Willard L. Converse,* and *Arnold M. Bellis,* for respondent-plaintiff.

MURPHY, JUSTICE.

This case involves an automobile accident which took place the night of December 21, 1954. The plaintiff, Saranette Frank, was a passenger in a car driven by Ione Stiegler, one of the defendants. The plaintiff was riding in the rear seat. The automobile was proceeding south on Penn Avenue North in Minneapolis toward the intersection of Penn and Fifth Avenue North. There were cars parked on both sides of Penn Avenue and the Stiegler car was being driven close to the center of the street. When the Stiegler car was about 20 feet from the intersection, Mrs. Stiegler first observed the lights of an automobile being driven east on Fifth Avenue North and approaching Penn. This automobile was being driven by Samuel Lott, who is also a defendant in this case.

Penn Avenue North is a through street in this area. There were arterial stop signs on Fifth Avenue but no stop signs whatsoever on Penn. According to Mrs. Stiegler's testimony, she did not observe the Lott car prior to the time when she was about 20 feet from the intersection because of a hedge on the corner lot which obscured the view; she assumed that the Lott car was going to stop for the stop sign, so she continued at the same speed, which was 20 to 25 miles an hour. She glanced away from the Lott car, apparently to look for traffic from the other direction. When she glanced back, the Lott car was practically upon her. She was in the intersection at this time, and her first impulse was to press her foot down on the accelerator to attempt to get past the other car. Whether or not Mrs. Stiegler actually did ac-

celerate her car before the impact is not clear from the testimony. At any rate, the Lott car struck the right rear fender of the Stiegler car. This impact sent the Stiegler car into a 180-degree spin and it finally collided rear to rear with a car parked in the west parking lane of Penn Avenue. The Stiegler car moved approximately 80 to 100 feet from the point of impact with the Lott car. The force of the impact with the parked car moved it 8 to 10 feet. The owner of the parked car testified that he either had left the car in gear or had put on the emergency brake. At some point the left rear door of the Stiegler car came open and Mrs. Frank, the plaintiff, was thrown into the street. She suffered very severe personal injuries. She was found lying on the street partly under the Stiegler car and partly between the car and the west curb. When the car came to a halt, Mrs. Stiegler's foot was on the brake. No one knew when she put her foot on the brake or whether she was accelerating or braking the car during the spin. However, there is no doubt that the Stiegler car was out of control after the initial impact with the Lott car. Mrs. Stiegler admitted that she knew that the front wheels of a car should be turned in the direction of the skid but that she did not so turn the wheels.

Mr. Lott testified that he stopped at the stop sign or slightly before he came to it. He testified that he looked both ways but did not see any traffic. He then started out to cross Penn Avenue. He did not observe the Stiegler car, by his own testimony, until the moment of impact. He did not further observe the Stiegler car and proceeded across Penn Avenue to park his automobile. By his own testimony and that of two investigating police officers, Lott was under the influence of intoxicating liquor at the time of the accident. According to the police officers, Lott admitted at the time of the accident that he had not stopped for the stop sign.

Mrs. Frank brought suit against Mrs. Ione Stiegler, Alan L. Stiegler, her husband and the owner of the car, and Mr. Lott. The jury brought in a verdict of $44,000 for the plaintiff, holding all of the defendants jointly liable. The defendants Alan and Ione Stiegler moved for an order granting them judgment notwithstanding the verdict or in the alternative for a new trial. This motion was denied by the trial court. The Stieglers then appealed the denial of their alternative motion.

■ The first question raised by the defendants Alan and Ione Stiegler relates to the alleged error of the trial court in denying their motion for judgment notwithstanding the verdict. This motion was based upon the ground that the verdict was not justified by the evidence and is contrary to law. From an examination of the record it appears to us that there was sufficient evidence to warrant the court in submitting the question of Mrs. Stiegler's negligence to the jury. From the physical facts it appears that, after the Stiegler car made contact with the Lott automobile, it moved in a 180-degree arc during which it traveled a distance of approximately 80 to 100 feet with sufficient force to propel the parked car with which it ultimately collided a distance of from 8 to 10 feet. The damage to the vehicles, the positions of the vehicles after they came to rest, the position of the plaintiff after she was thrown from the Stiegler car, and the injuries she sustained were all factors which the jury could weigh in considering the fact question of speed. From the evidence in the record the jury could not only consider whether or not Mrs. Stiegler entered and proceeded through the intersection at an excessive rate of speed but also whether or not she maintained a proper lookout and had the automobile she was driving under proper control.

Recent decisions of this court have firmly established the rule that a jury may base its findings on circumstantial evidence notwithstanding direct evidence to the contrary; thus, excessive speed may be inferred from evidence of the force of the impact, damage to the vehicles, the gyrations of the vehicles, and injuries to the occupants. Knuth v. Murphy, 237 Minn. 225, 230, 54 N. W. (2d) 771, 775; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

■ The defendant Lott, operator of the automobile which collided with the Stiegler car, was allowed to testify over objection that he thought Mrs. Stiegler was driving at about 35 miles an hour at the time of the collision. The defendant Lott did not see the Stiegler car until the moment of impact. His testimony on cross-examination brings this point out clearly.

"Q. Yes, but I am trying to find out first: your first view of the car that you had was right at the moment when you hit it; that is correct, isn't it?

"A.   Yes.

"Q.   And from that point on you did not see what happened to the other car at all?

"A.   No, I did not."

We have held that any person of ordinary ability and intelligence, having the means or opportunity of observation is competent to testify as to the rate of speed at which a vehicle is moving at a given time. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371. But it is apparent from the record that at the time of the accident the witness Lott did not possess the faculties of a person of ordinary ability and intelligence nor did he under the circumstances have the means or opportunity of observation so as to make him a competent witness to testify as to the rate of speed. His testimony as to a number of points is not clear. He admitted that he had been drinking during the afternoon of the accident and that at the time it occurred he was under the influence of liquor. Two police officers who were at the scene of the accident testified that he was under the influence of liquor.

The defendants rely on Beecroft v. G. N. Ry. Co. 134 Minn. 86, 158 N. W. 800, affirmed per curiam, 242 U. S. 618, 37 S. Ct. 213, 61 L. ed. 530.

The authorities are not in harmony as to the admissibility of opinion testimony as to the speed of vehicles by persons who may have only a momentary view of the vehicles at the time of the accident. See, Annotation, 156 A. L. R. 382, 385. While the qualifications of a witness to estimate the speed of a vehicle are largely a matter within the discretion of the trial court, it is our view that it was error to permit testimony of the witness as to speed where his observation, while he was in an intoxicated condition, permitted him to have only a momentary view of the car with which he collided. The admission of his testimony may have been particularly prejudicial in view of the court's instruction that at the time and place of the accident a speed in excess of 30 miles per hour was negligence per se.[1]

---

[1]The following is the relevant instruction: "* * * certain speed limits are set out, which don't affect us except insofar as the City of Minneapolis is

■ The defendants allege that the trial court also erred in its instruction on the application of the emergency rule. We have said that, where one who is confronted with a sudden peril through no fault of his own does not choose the best or safest way in his attempt to escape, he should not be held negligent because of his choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions. Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861; Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357. The defendants complain that the court's instruction restricted the jury in its consideration as to the time when the emergency occurred. They argue that the jury was instructed that the emergency began *after* the two automobiles collided. It is their contention that the instruction as to the emergency rule should have permitted the jury to apply it to the events occurring immediately before the impact as well as to those events which followed. The instruction is not entirely clear and on the subsequent trial of this case it should be clarified in accordance with the authorities herein cited.

■ In its instructions with reference to the standard of the ordinarily prudent man the court said: "He is sometimes referred to as the ideal of the community as far as care is concerned * * *."[2]

The defendants contend that the use of the word "ideal" in the in-

---

concerned, where they have a top of thirty miles an hour, and it shall be an absolute speed limit and any speed in excess of that shall be unlawful and shall be, as I said, evidence per se or negligence per se."

[2]Apparently this instruction was prompted by the trial court's desire to simplify the definition of the standard of care required of the ordinarily prudent person, by condensation of a statement contained in Prosser, Torts (2 ed.) § 31, which in full context is:

"The standard required of an individual is that of the supposed conduct, under similar circumstances, of a hypothetical person, the reasonable man of ordinary prudence, who represents a community ideal of reasonable behavior. The characteristics of this imaginary person include:

"a. The physical attributes of the actor himself.

"b. Normal intelligence and mental capacity.

"c. Normal perception and memory, and a minimum of experience and information, common to all the community.

"d. Such superior skill and knowledge as the actor has, or holds himself out as having, when he undertakes to act."

struction could have but one meaning as applied to the case and that is that a standard of perfection was required as opposed to the standard of reasonable care which persons of ordinary prudence usually exercise under similar circumstances. It is contended that this definition of the ordinarily prudent man could have misled the jury. See, 13 Dunnell, Dig. (3 ed.) § 6970, and cases cited therein. It is true that other language in the instruction properly defined the standard of care required and it is apparent that the trial court used the term "ideal" in the sense of a standard of reasonable behavior. While an instruction should be considered from the standpoint of its total impact upon the minds of the jurors, and the language complained of should be viewed in the light of the entire instruction, it is evident, nevertheless, that the instruction as to the standard of care required is so completely at variance with the correct rule that we cannot say that the cumulative effect of the instruction, together with other deficiencies in the charge, did not have a prejudicial effect upon the minds of the jury.

The defendants also claim that the trial court's instruction on concurrent negligence was erroneous. The court charged the jury that: "All that is necessary here is that the combination, even if it is ninety-nine on one side and one on the other side, if the combination is negligence and that negligence is the proximate cause of this injury, and that has been shown by a fair preponderance of the evidence, then you would find in favor of the plaintiff and against all of the defendants." We agree with the defendants that the foregoing charge sets forth an inappropriate illustration for the application of the law of concurrent negligence as it exists in this state.

In the case of contributory negligence of a plaintiff, this court has held that it was erroneous to instruct the jury that, if the plaintiff's negligence contributed in the slightest degree to the accident, then he cannot recover. Craig v. Benedictine Sisters Hospital Assn. 88 Minn. 535, 93 N. W. 669. We also said in that case that the standard for determining contributory negligence by a plaintiff is the same as that for determining the negligence of a defendant, and since the court held it erroneous to charge that a plaintiff is barred from recovery for the slightest negligence, it necessarily follows that it would also be erroneous to charge that a defendant can be held liable for the slightest

degree of negligence.

The plaintiff-respondent relies on Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685, to support her contention that the trial court's instruction on concurrent negligence was not erroneous. That case may be distinguished. The trial court there instructed the jury that, if both defendants were negligent, they are both liable if their negligence contributed in some degree toward the occurrence of the collision. This court said that the instruction as a whole obviously conveyed the idea that a verdict was to be returned against both defendants only if they were each guilty of substantial negligence constituting a proximate cause of the collision, and we affirmed the trial court. One statement which we made in that case is pertinent (225 Minn. 337, 30 N. W. [2d] 692):

"We do not think that the charge is subject to the objection that it permitted recovery based on slight negligence."

The instruction in the instant case clearly does permit recovery for slight negligence. If two defendants are to be both held liable for concurrent negligence when one was ninety-nine percent negligent and the other was only one percent negligent, the defendant who is only one percent negligent is liable for *slight* negligence. This is not the law in this state, and the trial court committed reversible error in so instructing the jury.

Concurrent causes of negligence are causes acting contemporaneously and which together cause the injury which would not have resulted in the absence of either. Johnson v. Northwestern Tel. Exch. Co. 48 Minn. 433, 51 N. W. 225; Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744. A proper instruction on concurrent negligence, as indicated by Craig v. Benedictine Sisters Hospital Assn. *supra;* Kapla v. Lehti, *supra;* and Carlson v. Fredsall, *supra,* would be to inform the jury that, where the concurrent negligence of each operator of the colliding vehicles combined together and contributed concurrently as proximate causes of injury to another, each becomes liable for the whole even though one may have contributed in a greater degree to the injury.

Other points were raised in briefs and arguments which, in light of

what we have already said, do not require discussion. Inasmuch as there is no question as to the amount of damages awarded, the new trial is specifically limited to the issue of appellants' liability

Order reversed and new trial granted on the issue of liability.