## T. JONES and Others v. ROBERT BURGESS and Another.[1]

January 9, 1914.

Nos. 18,299, 18,462—(164, 265).

**False representations by seller — evidence — interest on sum demanded.**
In this action to recover damages for fraudulent representations claimed

[1] Reported in 144 N. W. 954.

Note. — The question of implied warranty of fitness of stallions is treated in

to have been made by defendants' agents in the sale of a stallion to plaintiffs, it is *held:*

(1) The evidence sustains the verdict on the point that such fraudulent representations were made.

(2) The evidence sustains the verdict on the point that defendants sold the stallion to plaintiffs and that the persons who made the fraudulent representations were defendants' agents in making the sale.

(3) It was not error to permit one of said agents to testify that he was working for defendants, over the objections that the answer was a conclusion.

(4) Plaintiffs were entitled to interest on the amount paid for the horse as an element of damages, or a legal incident to the demand of damages in the complaint. In such case interest may be awarded though not asked for in the complaint.

Action in the district court for Grant county against Robert Burgess and Charles Burgess, copartners as Burgess & Son, to recover $2,800. The facts are stated in the opinion. The case was tried before Flaherty, J., who denied the defendants' motion to direct a verdict in their favor, and a jury which returned a verdict for $3,782.60 in favor of plaintiffs. Defendants' motion for a new trial was denied. From the judgment entered pursuant to the verdict, defendants appealed. Affirmed.

*Barnes & Magoon, Charles S. Cairns, George W. Beise* and *W. J. Black,* for appellants.

*F. W. Murphy, S. C. Anderson, E. J. Scofield* and *C. J. Gunderson,* for respondents.

BUNN, J.

Action to recover damages for fraudulent representations claimed to have been made by defendants' agents in the sale of a stallion to plaintiffs. The jury returned a verdict in favor of plaintiffs for $3,782.60. Defendants' motion for a new trial was denied, judgment entered on the verdict, and this appeal taken from such judgment.

Defendants, who reside at Wenona, Illinois, are engaged in the business of buying, importing and selling Belgian and Percheron

notes in 15 L.R.A.(N.S.) 868 and 31 L.R.A.(N.S.) 783. And for express warranty as to stallions as excluding implied warranty, see note in 33 L.R.A.(N.S.) 505.

draft horses for breeding purposes. Plaintiffs are the members of a partnership called the Herman Belgian Horse Association, organized for the purpose of purchasing, owning and managing a Belgian stallion in the vicinity of Herman, Minnesota. On or about May 8, 1905, one Norton, a horse dealer then residing at Milbank, South Dakota, appeared at Herman with a stallion; a few days later he was joined by one Hunt of Watertown, South Dakota. By exhibiting blue ribbons, and medals which they claimed the horse had won, and by representing him to be a full blood Belgian, they induced plaintiffs to purchase.

The evidence is amply sufficient to show the falsity and fraudulent character of the representations made by Norton and Hunt.

The controversy on the trial largely centered around the question whether the sale was made by Burgess & Son, acting through Norton and Hunt as their agents, or whether the sale was made by Hunt as the owner of the animal, assisted by Norton as his agent. The claim of defendants is that in April, 1905, they sold the horse to Hunt, and that Hunt, and not defendants, sold to plaintiffs. Plaintiffs' contention is that Norton and Hunt were acting as the agents of defendants in making the sale.

The claim of defendants that they did not own the horse and sell him to plaintiffs, has some nominal support in the testimony of defendant Robert Burgess that they sold the animal to Hunt in the spring of 1905; the testimony of Glass, defendants' agent at Watertown, that he turned him over to Hunt, together with the certificates of registry and pedigree, and the fact that the notes of plaintiffs given for the purchase price were made payable to Hunt. But the evidence is quite convincing that there had been no sale to Hunt, and that Hunt and Norton were acting for defendants in the transaction with plaintiffs. It is worthy of note that the answer, while it contains a general denial, does not specifically deny that defendants sold the horse to plaintiffs, and expressly alleges that "the stallion described in the  *  *  *  complaint was in all things as warranted by said Robert Burgess & Son in their written warranty." On the sale Norton and Hunt procured the signatures of plaintiffs to a writing in a leather-covered book marked "Burgess & Son," which writing re-

cited: "We, the undersigned, having heretofore examined and found entirely satisfactory and as represented to us by Robert Burgess & Son, the stallion Bayard de Thy, * * * do hereby purchase the said horse of Robert Burgess & Son." There was delivered to plaintiffs an instrument signed "Robert Burgess & Son (L. S.) F. S. Hunt," which recited that "we have this day sold to the Herman Belgian Horse Co. * * * the imported Belgian stallion, named Bayard de Thy * * * upon the following terms." While the notes of the defendant plaintiffs were payable to Hunt, they were all indorsed by him and sent to Burgess & Son. There is evidence that horses taken by Norton & Hunt in part payment for the stallion found their way into the stables of defendants. In an affidavit made by Robert Burgess in March, 1908, he swears that defendants sold the horse to Charles Glass of Watertown, South Dakota. In letters written to one of the plaintiffs in 1908, Burgess states that they sold the horse to Glass. Admittedly Glass was then defendants' agent in charge of its barns in Watertown. In addition to these rather persuasive items of proof, there is the evidence of Norton to the effect that he was in the employ of defendants in making the sale to plaintiffs, and other evidence not herein particularly mentioned. We hold not only that the verdict is amply supported by the evidence on the question whether defendants, acting through their agents, Norton & Hunt, sold the horse to plaintiffs, but that no other conclusion could well have been reached. Clearly defendants are responsible for the fraudulent representations of their agents.

It is claimed that it was error to permit Norton to testify that he was "working for" defendants in selling the horse, over the objection that it was a conclusion. This may technically have been an "opinion " of the witness. But courts are rightly breaking away from the rule that excludes opinion evidence, and multiplying the exceptions to the rule. 1 Dunnell, Minn. Dig. § 3312; 3 Wigmore, Evidence, § 1929. We approve the following statement quoted by Mr. Dunnell from Thayer on Evidence, 525: "There is ground for saying that, in the main, any rule excluding opinion evidence is limited to cases where, in the judgment of the court, it will not be helpful to the jury. * * * It is obvious that such a principle must

allow a very great range of permissible difference in judgment; and that conclusions of that character ought not, usually, to be regarded as subject to review by higher courts." It was not reversible error, if error at all, to receive the testimony objected to.

It is urged that the damages are excessive. This claim is based upon the fact that the verdict is made up of the amount paid by plaintiff for the horse less its actual value as shown by the evidence, together with interest from the time of the payment. The complaint did not demand interest, and the point is made that it could not be recovered in the absence of a demand therefor in the complaint. We do not sustain this contention. Interest was recoverable as a legal incident of the demand sued on, and not by virtue of a contract therefor. In such a case it is not necessary to ask for interest in the complaint. 22 Cyc. 1574.

The assignments of error not covered by what we have said, and not waived by defendants, have been considered. There is no merit in any of them.

Affirmed.