KANE, Special Administratrix, Plaintiff and Appellant, vs. LOYD's AMERICAN LINE, INC., and others, Defendants and Respondents: MILWAUKEE AUTOMOBILE INSURANCE COMPANY, Impleaded Defendant and Respondent.*

*May 14—June 15, 1945.*

---

* Motion for rehearing denied, with $25 costs, on September 11, 1945.

For the appellant there were briefs by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Thomas M. Skemp.*

For the respondents Loyd's American Line, Inc., and American Fidelity & Casualty Company there was a brief by *Lees & Bunge,* and oral argument by *L. M. Engelhard* and *Otto O. Marquardt,* all of La Crosse.

For the respondents Edwin E. Erickson and Leif Erickson there was a brief by *Gordon, Law, Brody, Johns & Roraff* of La Crosse, and oral argument by *Leonard Roraff.*

BARLOW, J. On appeal, appellant claims that the court erred in its instructions to the jury and in refusing requested instructions, and also erred in the admission of evidence.

The accident happened just north of Homer, Minnesota, on United States Highway 61, between La Crosse, Wisconsin, and Winona, Minnesota, on the night of February 21, 1944. The highway runs generally in a north-south direction, fol-

lowing the west bank of the Mississippi river. At the point of the accident, and for some distance both ways from that point, the highway runs almost due east and west. It is a twenty-foot concrete highway with six-foot shoulders at the place of the collision, and has a curve of one degree thirty minutes, with a radius of 3,819.58 feet, which can be considered almost straight. The highway going out of Homer to the north and then to the west climbs along an incline and then levels off for a few hundred feet at the crest of the grade, and then starts down at a very slight grade in the direction of Winona, Minnesota. The down grade amounts to 1.72 feet in three hundred, or about six inches per one hundred feet. The collision occurred about three hundred feet west of the point where the road starts down the slight grade from the level crest of the hill. From the point of collision there is a clear view of over a thousand feet in either direction.

On the night of the accident, this highway was slippery and icy from a point three hundred feet east of the point of the accident to Winona, and to the east and south for a considerable distance the highway was wet and slippery, causing a car to skid.

A truck of defendant and respondent Loyd's American Line, Inc., driven by Howard Kuhlman, was proceeding from Winona, Minnesota, toward La Crosse. Traveling up the grade toward the point of the accident the hill was so slippery that the driver would proceed for a few feet and would then let his wheels spin until they burned a hole through the ice and would grab the ground or concrete. The driver pulled partly to the south of the concrete highway so that his right front and rear wheels were on the shoulder and his left wheels on the concrete. When this truck reached a point approximately three hundred feet west from the summit of the hill, a truck of Edwin E. Erickson and Leif Erickson, defendants and respondents, doing business as Federal Bakery Company, driven by Robert Griesel, came from the east and started down the grade at about four or five miles per hour. Due to the

icy condition of the highway the Federal Bakery Company truck skidded across the highway and came to rest with the left side of its cab against the left side of the cab of the truck of the respondent Loyd's American Line, Inc., which was stalled at that point. No damage was caused to the trucks, but due to the icy condition of the highway they could not be separated on their own power. Cars could easily pass the trucks by traveling partially on the concrete and partially on the shoulder. Two vehicles following the Federal Bakery truck passed without any difficulty.

The drivers of the trucks were unable to get out of the left doors of their trucks, due to the fact that the trucks were jammed together. They immediately got out of the right doors of their respective trucks, to determine first whether anyone was injured, and, second, whether the trucks could be moved. No one was injured.

A Gateway City Transfer Company truck, driven by Lloyd Stevens, was following the Loyd's truck very closely. He brought his truck to a stop about twenty feet behind the Loyd's truck and immediately got out and went to the stalled trucks, arriving at that point about the same time as the drivers of the other two trucks, meeting approximately in front of the Federal Bakery truck. Two of the drivers had flashlights and made a quick investigation to see whether the trucks could be moved without use of sand, which investigation took but a few seconds. They then started for their flares, when the car driven by James Kane, deceased, appeared in the distance, traveling west, which is in the direction the Federal Bakery truck was traveling. The Kane car was coming at a high rate of speed and the truck drivers waved their flashlights to warn the driver. He was coming at such a rate of speed that the truck drivers, as a matter of safety, began to run. The Kane car crashed into the rear of the Federal Bakery truck an instant later, and it was struck with such force by the Kane car that although the brakes were locked it was driven forward fifteen feet.

The Loyd's truck was equipped with three flares, located on the outside of the cab to the left of the driver, and also had some fusees inside of the cab. The Federal Bakery truck was equipped with three flares located on the outside of the cab to the left of the driver. No question is raised that the trucks were not properly equipped with flares and signaling equipment. The flares on the outside of the trucks could not be reached or removed from the inside of the cab, and due to the location of the trucks, it was difficult to get at them. One of plaintiff's witnesses testified it would have been impossible to set out the flares before the accident happened.

Deceased Kane and Samuel Goldberg were soldiers stationed at Camp McCoy, Wisconsin. They left Camp McCoy about 6:15 p. m., prior to the accident, traveling in a Chrysler automobile of the deceased. They arrived in La Crosse between 7:30 and 8 p. m., and later went on to Winona, Minnesota, to a place called the Blue Blazer Cocktail Lounge, arriving there about 9:15 p. m. There they met two girls, had something to drink and then the four of them went to a tavern or roadhouse known as "Louise's Place," on the Wisconsin side of the river across from Winona. They had something to drink there, and next they decided to go to the Ship, another roadhouse between Winona and La Crosse, on the Minnesota side of the river.

In order to get to the Ship, they drove through Winona, along Highway 61, the same route on which the accident happened, passing the point of the accident and on to the Ship, which is located near Dresbach, Minnesota. The distance from the Wisconsin tavern to the point of the accident is eight miles, and it is seventeen miles from the place of the accident to the Ship, making a total of twenty-five miles from the Wisconsin tavern to the Ship. When the party arrived at the Ship it was closed, and they turned around to go back to Winona. The Kane car left Louise's Place about 1 a. m., and the accident happened about 2 a. m.

The jury found the deceased Kane was negligent as to speed, lookout, management and control, and found the drivers of the trucks were not negligent as to use of flares or other signaling equipment.

Appellant claims respondents' truck drivers were guilty of negligence in their failure to use flares, lanterns, or other lighted signals as promptly as required by the rules of the interstate commerce commission, the statutes of Minnesota, and the common law. Respondents claim that sufficient time did not elapse to permit them to place their lighted signals on the highway, and that deceased was negligent in the operation of his automobile.

The accident in question having occurred in the state of Minnesota, any contributory negligence of the decedent is a defense to the action and is for the jury. *Cowperthwait v. Tadsen* (1942), 212 Minn. 49, 2 N. W. (2d) 429. The doctrine of comparative negligence is not the law of Minnesota. The jury found the decedent guilty of causal negligence in respect to, (1) speed; (2) lookout; and (3) management and control, and found respondents guilty of no negligence. If any one of the jury's findings of causal contributory negligence has evidence to support it and no prejudicial error was committed with respect thereto, the judgment must stand.

Appellant argues that the court committed error in instructing the jury that "where the motorist is driving at such speed that he cannot stop within the range of the illumination of his headlights he is negligent as a matter of law." It is claimed this was error as the sudden slippery condition which confronted the deceased made it impossible for him to stop his car. Deceased had knowledge of the condition of the highway, as he had passed over it less than an hour before the accident, and it was his duty to operate at such a speed that, taking into consideration the known condition of the highway, he would be able to stop within the range of the illumination of his headlights. A driver of an automobile cannot

wholly ignore conditions which he knows to exist and be relieved of the responsibility with which he is charged under the law by claiming this known condition is an emergency.

Appellant also contends that it was error for the court to refuse an instruction under the emergency rule as laid down in the Minnesota case of *Smith v. Carlson* (1941), 209 Minn. 268, 275, 296 N. W. 132, and claims that when deceased came upon a sheet of glare ice on the highway and a truck was blocking his side of the traveled portion of the highway, the emergency rule should apply. It is said there that "one faced with an emergency is bound to exercise only that caution and judgment which could reasonably be expected from an ordinarily prudent person under the circumstances." But it is also the rule of law in Minnesota, and generally, that where a situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf. *Johnson v. Townsend* (1935), 195 Minn. 107, 261 N. W. 859; *Dahlstrom v. Hurtig* (1940), 209 Minn. 72, 295 N. W. 508; 5 Am. Jur. p. 600, sec. 171. With the deceased having full knowledge of the condition of this highway, driving at the rate of speed at which the undisputed evidence shows he was driving, it is considered that the emergency was created by his own negligent speed, and that there was no error in not submitting the emergency rule to the jury. Decedent had knowledge of the condition of the highway, and was driving at a rate of speed which moved the Federal Bakery truck fifteen feet after striking it.

The foregoing are the only errors claimed by appellant which apply to the negligence of appellant's decedent, and with ample evidence to sustain the findings of the jury that decedent was guilty of causal contributory negligence in the operation of his automobile, it would serve no useful purpose to consider the other errors claimed which would only affect the negligence of the respondents.

*By the Court.*—Judgment affirmed.