RUTH SUNDEEN v. WILLIAM BARTHEL AND ANOTHER.
JOYCE M. GEISER v. EDWIN SUNDEEN.
WILLIAM BARTHEL, THIRD-PARTY DEFENDANT.
ROBERT P. GEISER v. SAME.
LUELLA BORCHARDT, A MINOR, BY PEARL BORCHARDT, HER MOTHER AND NATURAL GUARDIAN, v. SAME.[1]

March 12, 1954.

Nos. 36,203, 36,204, 36,205, 36,206.

[1]Reported in 63 N. W. (2d) 267.

*Swensen & Miley,* for appellant.

*S. Bernhard Wennerberg,* for respondent Ruth Sundeen.

*Frank L. King,* for respondents Joyce M. and Robert P. Geiser and Luella Borchardt.

*Clifford G. Nelson,* for respondent William Barthel.

NELSON, JUSTICE.

The following four personal injury actions are involved in this appeal: (1) Action by Ruth Sundeen against her brother, Edwin

Sundeen, as host and driver, and William Barthel, owner and driver of the other car in the collision; (2) action by Joyce M. Geiser, a passenger in the Barthel car, against Edwin Sundeen; (3) action by Robert P. Geiser, a passenger in the Barthel car, against Edwin Sundeen; (4) action by Luella Borchardt, a minor, a passenger in the Barthel car, against Edwin Sundeen.

After these actions were commenced, Edwin Sundeen, as defendant, obtained a joinder of William Barthel as a third-party defendant in the Geiser and Borchardt actions, which resulted in third-party pleadings being filed and issue fully joined in that manner. The cases were thereafter consolidated for purposes of trial. Defendant Sundeen moved for a directed verdict at the close of all the testimony, and this motion was denied by the court. The jury returned verdicts in favor of plaintiffs against both Edwin Sundeen and William Barthel in all four cases. The defendant Sundeen thereafter moved the court for an order for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was denied by the trial court, and the appeal to this court followed. The relief sought by defendant Sundeen, defendant Barthel not having appealed, is an order from this court setting aside the verdicts and granting judgment notwithstanding the verdict in all the cases, and if this be denied, then an order granting a new trial.

A reading of the record in these cases discloses a set of facts which are conflicting and contradictory in every respect. The evidence is fairly clear, however, on the following points:

The collision occurred on the evening of September 7, 1952, sometime between six and seven o'clock. The cars were approaching each other from opposite directions on trunk highway No. 95 about three miles west of Almelund in Chisago county. Highway No. 95 runs in an east-west direction and is of black-top construction approximately 24 feet in width with three- to five-foot shoulders off each edge, bounded by somewhat shallow ditches leading out from the shoulders. There was no painted center line, and although respondents emphasize the testimony of the highway patrolman that tarvia highways are constructed half at a time and that where the

two sides meet a line is formed in the center, the patrolman further testified that this particular highway had been seal-coated a month prior to the accident thus leveling the road and removing any such sign of a line.

Edwin Sundeen was driving his Ford automobile in an easterly direction on the highway, accompanied by his sister, plaintiff Ruth Sundeen, as his invited guest. William Barthel, owner of the other car involved, was driving his Chevrolet in a westerly direction on the highway, accompanied by plaintiffs Luella Borchardt, Robert Geiser, and Joyce Geiser, and a child who does not figure in these actions. As the two vehicles approached each other, a tractor driven by one Marion Magnuson, also traveling west, was directly ahead of the Barthel car. The two automobiles were traveling from 40 to 45 miles per hour at the time of impact. Both cars were damaged on their left fronts, which indicates a head-on collision to that extent. Although the evidence is conflicting as to the time of the accident and the visibility at the time of impact, the highway patrolman called to the scene testified that he was notified of the collision at 6:44 p. m., only six minutes after sunset on September 7, and other testimony indicates that visibility was good although the sky was partially clouded over.

There is no impartial eye-witness account of the impact, since Marion Magnuson, the tractor driver, stated that the accident occurred somewhere close to the rear of the tractor after she had met and passed the Sundeen car, and that although she heard the crash she did not see it.

Whether Edwin Sundeen was negligent in the operation of his car and, if so, whether his negligence contributed to the cause of the accident, along with the established negligence of Barthel, depends largely on the position of the two cars at the time of impact; and it is on this point that the testimony is conflicting and contradictory.

Sundeen testified that, although his view was open and unobstructed, he recollected seeing the tractor and the Barthel car only when he was a quarter of a mile from them and that he did not

at any time see the Barthel car again either before the collision or at the time of impact.

Testimony of the parties in the Barthel car indicates that none of them saw the tractor ahead until within 80 to 100 feet from it. There is some controversy as to whether the tractor was being driven on the shoulder or whether it took up most of its own lane, but it is uncontested that at no time was the tractor in the wrong lane. Evidence discloses that the tractor was of normal size and no more difficult to see over than others commonly seen on our highways. Apparently Barthel applied the brakes and turned out with the intention of passing the tractor. The highway patrolman testified that after the accident Barthel had made a statement that on first seeing the tractor he applied his brakes and slowly skidded into the other lane. Only when he was partially in the other lane did Barthel see the Sundeen car coming toward him. The evidence is contradictory as to whether Sundeen was then driving in his proper lane. Ruth and Edwin Sundeen both testified that Sundeen had been driving in his own lane at all times, but the testimony of Barthel and Robert Geiser was that Sundeen was driving on or toward the center of the road immediately prior to the accident. Marion Magnuson, driver of the tractor, stated that she had seen both vehicles prior to the accident and that at that time both were in their proper lanes.

An attempt to discover the position of the cars at the impact by noting the location of the cars after the accident is hampered by the fact that the Barthel car was removed by a tow truck before the highway patrolman arrived at the scene. The testimony of witnesses who saw the cars while they were both in position is largely contradictory. Elmer Frestad, who arrived at the scene soon after the accident, testified that the Barthel car was three-fourths in the eastbound lane facing south with its front end one or two feet from the south edge. Harry Medin, the deputy sheriff, first testified that the front end of the car was over the center of the road into the eastbound lane but later said it was "just up to the center line." Joyce Geiser testified that the Barthel car was on the eastbound

lane to such an extent that traffic immediately after the accident was forced to pass the cars on the north side of the highway. Much of the testimony of Marion Magnuson was confused and self-contradictory, and it is of little value on this point.

There is no controversy as to the location of the Sundeen car, which the evidence indicates was toward the outside edge of its own lane, with the right wheels on the shoulder.

Much of the controversy concerns the existence and origin of certain skid marks starting 17 feet, four inches from the north edge of the highway, turning south into the eastbound lane, ending six feet, six inches from the south edge of the highway, and running continuously for a total length of 69 feet. Barthel contends that these skid marks were made when his car was hauled away by the tow truck because the rear wheels on the car were locked at that time. Appellant Sundeen, however, contends that the skid marks were caused by Barthel's hard application of the brakes while he was heading into the eastbound lane and that since the skid marks were continuous they indicate that Barthel was across the center of the road at the time of impact and continued skidding on to his alleged location after the collision in the eastbound lane.

Deputy sheriff Medin testified that when the car was removed the rear wheels of the Barthel car were locked; that the tow truck backed up to the front of the car, raised the front wheels in fastening it to the tow truck, and then proceeded southerly over the pavement and shoulder, turning east partially off the shoulder through the ditch and then back onto the black top and east to Almelund, about three miles distant. Frestad substantiates this testimony as to the manner of the removal of the Barthel car. Frestad further testified that the skid marks ran up to the Chevrolet, which was located on the south edge of the skid marks in the eastbound lane before it was towed away, but this testimony is not substantiated by any other evidence. Marion Magnuson saw the skid marks leading up to the Barthel car but she did not see marks on the south side leading to the Sundeen car.

Although there was no debris by which to fix the point of impact, deputy sheriff Medin did discover two oil marks at or near the front of the Barthel car, both being about one foot south of the center of the highway.

It appears clearly that the testimony of the two drivers and their witnesses is at complete variance. Unless it can be said that the tractor as it proceeded westerly on the highway was a contributing cause of the accident, there were no hazards except those created by either or both the drivers.

The verdict clearly establishes that Barthel was negligent in the operation of his car, and there is no appeal from this finding. The question for our determination is whether the evidence offered justified the trial court in submitting to the jury the questions whether Sundeen was also negligent and whether the concurrent negligence of both defendants was the proximate cause of the accident. The defendant Sundeen contends that the plaintiffs failed to establish any negligence on his part which proximately caused or contributed to the collision and that the accident was caused solely by the negligence of the defendant Barthel in the operation of his car immediately preceding and at the time of the impact.

The rule seems to be well settled that, where the facts are in dispute and the respective claims of contending parties are at variance with the evidence supporting the claim of each, the court should submit the issues to the jury as "questions of fact." Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231; State v. Rose, 47 Minn. 47, 49 N. W. 404.

It is also well established that a motion for judgment notwithstanding the verdict accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn therefrom, as well as the credibility of the testimony for the adverse party, and if the application of said rule, in the light of the evidence as a whole, discloses a reasonable basis for the verdict, the motion must be denied. Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357; Norling v. Stempf, 208 Minn. 143, 293 N. W. 250.

Defendant Sundeen contends that the evidence as a whole overwhelmingly preponderates in his favor. The basis for his position is that the physical facts (in this case the skid or tire marks) are controlling. He cites the case of Cofran v. Swanman, *supra*. In the Cofran case the defendant Swanman's car was traveling north in the east lane of highway No. 212 when it collided with another car. The plaintiffs, both passengers of the defendant, testified that just before the collision the defendant had swerved into the opposite lane. But against this testimony was that of four witnesses, including the deputy sheriff, that all the debris was in the east lane. A highway patrolman testified that a distinct skid mark led directly from the rear wheel of the other car into the east lane. Furthermore, ruts in the snow indicated that Swanman's car had been pushed into the east shoulder. In a car following the defendant's car were three eye witnesses who testified that at all times the Swanman car was driving on the east side of the road. On those facts the court denied recovery to the plaintiffs. But it is apparent from a reading of the Cofran case that it is not in point with the case at bar, where the evidence is so much more contradictory in all respects.

Had the testimony here of the various witnesses as to the origin of the skid marks been so consistent as to lead to the one conclusion that they were caused during the negligent operation by Barthel of his automobile, we would have a different situation. But, when we view all the testimony with reference to the skid marks, particularly that given by deputy sheriff Medin and the state highway patrolman, in conjunction with the photographs showing the skid marks which were submitted as evidence, it appears that the tire marks might have been caused in part if not wholly by the Barthel car being towed away while its rear wheels were locked. Counsel for the defendant Sundeen frankly and commendably stated in his oral argument that, but for the skid marks and the other physical facts, he would have had to concede that the facts were so conflicting as to justify submitting them to the jury; but his contention is that the physical facts are so conclusive as to require that the issue be decided by the court as a matter of law. But here, where

the physical facts are capable of having more than one interpretation and the testimony is so conflicting, we come to the conclusion that the issue was one properly to be decided by a jury.

This court stated in McCarty v. C. M. & St. P. Ry. Co. 154 Minn. 350, 191 N. W. 819, that, whether the witness is a party to the action or not, the rule is that the jury and not the court must determine the effect of his contradictory testimony and that, if there is a fair doubt as to the inference to be drawn from admitted facts, the question must be submitted to the jury. Whitman v. Speckel, 237 Minn. 36, 53 N. W. (2d) 558; Clark v. Chicago & N. W. Ry. Co. 226 Minn. 375, 33 N. W. (2d) 484; J. I. Case Threshing-Machine Co. v. McKinnon, 82 Minn. 75, 84 N. W. 646.

Defendant Sundeen cites the case of State, by Burnquist, v. Paskewitz, 233 Minn. 452, 47 N. W. (2d) 199, as another case sustaining his position. We have concluded that that case is of no help in determining the instant case since there was no evidence of negligence in that case proved by the plaintiff. Defendant Sundeen also cites Lind v. Nebel, 232 Minn. 255, 45 N. W. (2d) 401, and Richards v. Pickands-Mather Co. 257 Wis. 365, 43 N. W. (2d) 359. Both of those cases present different fact situations than the one here involved and are not controlling under the fact situation here.

■ The defendant Sundeen in his notice of motion for new trials states as one of his grounds that the court erred in charging the jury that it becomes the duty of the jury to determine from the evidence as a fact issue whether the driver, who, having looked once and having seen an approaching automobile on the highway, thereafter paid no further attention to its movements, was keeping a proper lookout in the exercise of due care. He argues that it was prejudicial error to submit to a jury the question of proper lookout by a driver who saw an oncoming vehicle at a distance traveling in its own lane and did not see it again until the collision, in a case where the oncoming car suddenly pulled to the left of a highway from behind a tractor which it had followed and collided with the approaching car after the latter had practically passed the tractor. That part of the charge objected to does not constitute the complete

statement by the court on those issues however. The court begins the paragraph which includes the part objected to as follows:

"The operator of an automobile has no duty to expect otherwise but that every other driver on the highway will operate his vehicle in a lawful manner. It is nevertheless the duty of every operator of a motor vehicle upon the highways of this state to keep his vehicle under control, to keep a proper lookout, and to exercise due care to avoid danger or dangerous circumstances of which he has become aware, or of which in the exercise of due care he should have reason to have become aware."

The court then proceeded with the statement objected to, as follows:

"* * * In applying this principle to the facts of a particular case it becomes the duty of the jury to determine from the evidence as a fact issue whether or not the driver who having looked once and saw an approaching automobile on the highway, and thereafter paid no further attention to its movements, was keeping a proper look-out in the exercise of due care."

No greater measure of care should be required of one driver than of the other; the traffic rules apply to all who use our highways. Defendant Sundeen saw both the tractor and the approaching Barthel car about a quarter of a mile away and then he did not see the Barthel car again, according to his testimony. The defendant Barthel testified that he saw the tractor some 80 or 100 feet away as he approached it but that he did not see the Sundeen car approaching until almost instantly before the crash. The court stated the general rule as to the alertness required at all times of drivers using the highways and their duties in that regard. He did not in any way, in connection with his charge, assume a state of facts which did not exist in the evidence.

The instructions of the court may properly point out issues of fact to be decided by the jury. It is of course the duty of the trial court to present to the jury the law applicable to the case in clear and intelligent language so that jurors may readily comprehend it, but a certain latitude as to form and expression of a charge is left to

408

the trial court, as long as the charge correctly states the substance of the law and the determination of the facts is left to the jury, after the jurors have been fully advised as to their distinct and separate responsibilities in that respect. Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180; Abraham v. Byman, *supra;* Newton v. Minneapolis St. Ry. Co. 186 Minn. 439, 243 N. W. 684; Flick v. Ellis-Hall Co. 138 Minn. 364, 165 N. W. 135; Meagher v. Fogarty, 129 Minn. 417, 152 N. W. 833; Guerin v. Hunt, 6 Minn. 260 (375).

Taking the charge of the court as a whole it appears to have been fair and comprehensive as to issues and clear as to the law applicable, and we find no prejudicial error in the quoted statement from the charge objected to by the appellant which would justify our ordering a new trial.

Defendant Sundeen moved for directed verdicts in his favor at the close of all the testimony, and his motion was denied by the court. The trial court again considered the evidence and the law applicable when it denied Sundeen's motions for judgments notwithstanding or new trial in the alternative. The court below was of the opinion that the evidence produced was sufficient to sustain the findings of the jury that both defendants were negligent. On the record before us we affirm the order of the court below denying the motions.

Affirmed.