## SAM DAUGHERTY AND OTHERS v. MAY BROTHERS COMPANY AND OTHERS.

121 N. W. (2d) 594.

May 3, 1963—Nos. 38,442 to 38,451.

*Carroll, Thorson, Anderson & Cronan* and *Herbert C. Davis*, for appellants.

*Robins, Davis & Lyons, Harding A. Orren, Lawrence Zelle, Swanson & Lasley, William M. Lasley, George Kodadek, King & MacGregor,* and *John P. Lommen,* for respondents.

NELSON, JUSTICE.

The cases involved on this appeal arise out of a collision which occurred on the morning of January 9, 1959, at approximately 5:20 a. m., between a tractor-trailer operated by defendant Kenneth P. Huber and owned by defendant May Brothers Company and a Chevrolet Impala automobile operated by defendant Earl L. Jensen and owned by defendant F. C. Jensen.

The accident happened at the intersection of Lyndale Avenue North and West Broadway in the city of Minneapolis. As a result of the collision the tractor-trailer unit ran into a building located on the southwest corner of the intersection, causing severe damage to the building and to personal property in it. Sam Daugherty, the owner of the building, brought an action against the owners and operators of the vehicles, which was consolidated with separate actions brought by the owners of the personal property.

In their answers to the complaints, May Brothers Company and Huber denied negligence, alleged that the collision was caused solely by the negligence of defendants Jensen, and cross-claimed against the latter for indemnity or contribution. The Jensens' answers denied negligence on their part, alleged the negligence of Huber and his employer, and asked dismissal of the cross-claim.

The record indicates that defendant Huber was driving the tractor-trailer south on Lyndale Avenue, bound for Mankato with a load of groceries. His equipment and its load weighed approximately 50,000 pounds. Defendant Earl Jensen was driving the Chevrolet west on Broadway and at the time was returning to a motel where he had been staying.

The intersection of Broadway and Lyndale Avenues was controlled by semaphore signals. These signals were flashing red on Broadway

Avenue, and amber on Lyndale Avenue, at the time of the accident. Lyndale Avenue is 42 feet wide and Broadway 60 feet wide at the intersection, and the area was level. Lyndale Avenue does not have any appreciable grade for about a block north of the intersection. Both roadways were surfaced with blacktop. The surface was a little damp at the time of the accident but not unusually slippery. The weather was warm for January, and there was no ice or snow on the streets. It was dark at the time the accident occurred, but the intersection was well lighted by mercury vapor lights and visibility in the area was good. The buildings adjacent to the four corners of the intersection are built up to the sidewalk line on each corner and to some extent restrict visibility on both streets.

The police officer who investigated the accident found debris some 24 feet south of the north curb line of Broadway and 12 feet east of the west curb line of Lyndale Avenue. He observed no skid marks.

The testimony of the drivers and of the witnesses who saw the accident is in conflict concerning the manner in which it happened. Huber said that he was 10 feet north of the north curb line of West Broadway, or approximately 35 feet from the point where the collision occurred, and was traveling at a speed of approximately 15 to 20 miles per hour when he first observed Jensen's automobile, which he testified was then east of the intersection and traveling at a speed of between 35 and 40 miles per hour. He also testified that Jensen did not stop for the flashing red signal before proceeding into the intersection. Huber said that as soon as he saw the Jensen automobile he was "pretty sure he [Jensen] wasn't going to stop" so he immediately applied his foot brakes and a hand brake which was designed to continue operating even if no pressure was being applied to it. Huber became unconscious when the collision occurred, and the tractor-trailer then careened into the building.

Three eyewitnesses also testified that the Jensen automobile did not stop for the flashing red signal, and the investigating officer testified that Jensen admitted that he had not noticed the signal. Jensen, however, testified that he did stop for the signal. His testimony is that he looked to see if any other vehicles were coming and, seeing none, pro-

ceeded into the intersection. He said that when the front of his car was at about the center of Lyndale Avenue, he saw the tractor-trailer approximately 18 to 20 feet from him and traveling faster than 30 miles per hour. Jensen's testimony as to his stopping and as to the position of his car and his estimate of Huber's speed were substantiated by a witness, Bernard P. Junglen, who had been standing on the northwest corner of the intersection talking with the night man at the corner drug store. Junglen testified that he first observed the tractor-trailer north of the intersection near his home, which is on the west side of Lyndale Avenue approximately 185 to 200 feet from the intersection. He said that just prior to the accident he stepped off the curb to cross West Broadway to the southwest corner of the intersection and that when he was about 2½ to 3 feet south of the north curb of West Broadway he saw the tractor-trailer a second time. He said that it was then 10 feet north of the north crosswalk of the intersection. Junglen's estimate of the speed of the tractor-trailer at that time was "between 30 and 35, 40 miles an hour, right in there."

Defendants requested an instruction on the emergency rule, which was refused. The trial court at the request of plaintiffs gave an instruction which permitted the jury to find that even if it determined that Huber was not guilty of negligence proximately causing the collision, it could nevertheless find that he was guilty of negligence which was the proximate cause of the damage to plaintiffs' property, despite the fact, conceded by plaintiffs, that he became unconscious at the time of the collision.

The jury considered only the question of liability and returned a verdict in favor of plaintiffs against all defendants, who thereafter moved for judgment notwithstanding the verdict or in the alternative for a new trial. Defendants May Brothers Company and Huber appeal from the trial court's order denying their motion, and they will hereafter be referred to as appellants.

Appellants assign as error the trial court's refusal to direct a verdict in their favor and its denial of their motion for judgment notwithstanding the verdict on the grounds that the verdict is not supported by the evidence and is contrary to law, and its admission, over proper objec-

tion, of testimony by defendant Earl L. Jensen and Junglen as to the speed of the tractor-trailer. They claim also that the trial court erred in instructing on (a) speed in excess of 30 miles per hour within a municipality; (b) Minn. St. 1957, § 169.67, subd. 5, relating to braking equipment; (c) plaintiffs' theory, including listing of claims of negligence which were without foundation in the evidence; and (d) the obligations of the drivers involved, including instructions on the caution signal, the relative rights of the drivers, and the obligation to drive at an appropriate reduced speed in approaching and crossing an intersection.

Plaintiffs contend that there was competent evidence properly admitted as to the fact that Huber was operating his vehicle at an excessive speed; that the evidence did not warrant the giving of an instruction to the jury on the sudden emergency rule; that there was sufficient evidence to warrant the giving of an instruction based upon Minn. St. 1957, § 169.67, subd. 5; that the instructions viewed as a whole are clear and unambiguous and correctly define the issues to be considered by the jury; and that the trial court properly instructed the jury regarding the respective obligations of the drivers.

█ Appellants challenge the sufficiency of the foundation to qualify defendant Earl Jensen and Junglen to testify to the speed of the tractor-trailer. Appellants contend that there must be an opportunity for observation and that the observation afforded must be such that the opinion expressed by the witness is more than mere guesswork.

It is the generally accepted rule that the speed of an automobile is not a matter of exclusive expert knowledge and skill and that anyone of reasonable intelligence with ordinary knowledge of time and distance is a competent witness to give an estimate. Thus, any person of ordinary ability and intelligence, having the means or opportunity of observation, is competent to testify as to the rate of speed at which a vehicle is moving at a given time. Frank v. Stiegler, 250 Minn. 447, 84 N. W. (2d) 912; Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27; Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371; Dunkelbeck v. Meyer, 140 Minn. 283, 167 N. W. 1034; Mierendorf v. Saalfield, 138 Neb. 876, 295 N. W. 901; 7 Dunnell,

Dig. (3 ed.) § 3322a. It is primarily the duty of the trial court to determine whether the circumstances are such that the evidence should be admitted. As this court pointed out in Hatley v. Klingsheim, 236 Minn. 370, 377, 53 N. W. (2d) 123, 127, "The sufficiency of the foundation establishing opportunity for observation rests largely in the discretion of the trial court."

In Jones v. Burgess, 124 Minn. 265, 144 N. W. 954, we observed that there is ground for saying that, generally, any rule excluding opinion evidence is limited to cases where, in the judgment of the court, it would not be helpful to the jury. See, Greenberg v. Holfeltz, 244 Minn. 175, 69 N. W. (2d) 369; 7 Dunnell, Dig. (3 ed.) § 3312, and cases cited.

■ In Hatley v. Klingsheim, *supra*, this court recognized that it is difficult to estimate the speed of an approaching automobile, especially at night. However, we held there that the weight to be given the estimate deals rather with its probative value than with its admissibility, citing Humphries v. Complete Auto Transit, Inc. 305 Mich. 188, 9 N. W. (2d) 55.

In the light of the evidence adduced at the trial, we can find no abuse of discretion by the trial court in its rulings permitting the testimony of Jensen and Junglen with reference to the speed of the tractor-trailer. The cases relied upon by appellants are not controlling on this issue since they are distinguishable on the facts.

■ Appellants contend that it was error for the trial court to refuse their requested instruction on the emergency rule. They assert that the rule in this state is that where an emergency arises through no fault of the party requesting the rule, the court may submit it. Appellants argue that such an emergency did arise in the instant case and that a jury might find that the emergency was not created by their negligence. Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861, established the principle, often referred to as the "rule of the Townsend case," that —

"* * * one, suddenly confronted by a peril, *through no fault of his own*, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was

so hazardous that the ordinarily prudent person would not have made it under similar conditions." (Italics supplied.)

The requested instruction was in the following form:

"Mr. Huber claims that immediately prior to the collision with the Jensen automobile he was confronted with an emergency situation. The law is that if he was suddenly confronted by a peril, through no fault of his own, and in an attempt to escape did not choose the best or safest way, he should not be held negligent because of such choice, unless it was so hazardous that the ordinary prudent person would not have done it under similar circumstances."

The trial court refused to give this instruction after hearing counsel for all parties in chambers.

Mr. Justice Magney, in discussing the trial court's refusal to give the emergency rule in Bakken v. Lewis, 223 Minn. 329, 335, 26 N. W. (2d) 478, 482, made the following comment:

"Defendants Lewis complain of the court's refusal to instruct the jury as to the emergency rule. As the recited facts show, Duane Lewis safely passed the trailer on its left. He put on his brakes as soon as he saw it. Because of his speed, his car skidded on all four wheels for a distance of 50 feet before he struck plaintiff and the Rehse car, which he admits he did not see. It has already been shown that the evidence fails to support the claimed negligence of defendant Wayne Lutz. Duane did choose the best and safest way in his attempt to escape and would undoubtedly have succeeded except for the speed at which he was traveling. If he had been going more slowly he would have avoided the accident. He was operating a skidding car because of his speed. We are of the opinion that the emergency rule is not applicable here."

The trial court also refused to give the emergency rule in Kachman v. Blosberg, 251 Minn. 224, 87 N. W. (2d) 687, because the emergency defendant encountered was of his own making due to his speed and his failure to keep a proper lookout. Upon those facts this court affirmed the ruling of the trial court. In Tilbury v. Welberg, 238 Minn. 91, 55 N. W. (2d) 685, this court held that where the evidence failed to establish that plaintiff was confronted by an emergency not of her

own making and that she chose one of two or more courses of action open to her, it was not error for the trial court to refuse to instruct the jury on the rule pertaining to emergencies. Compare Roeck v. Halvorson, 254 Minn. 394, 398, 95 N. W. (2d) 172, 176, where this court approved the giving of an instruction on the emergency rule, saying:

"* * * It appears to us that there may have been another alternative available. [The driver of an automobile which collided with a tractor] could, for example, have continued to apply the brakes rather than release them and attempt to go around the tractor. We are not prepared to say that this may not have been a safer procedure than the one he ultimately chose. In view of the foregoing, it was not error to instruct the jury on the emergency rule."

Instructions on sudden emergency in motor vehicle cases have recently been analyzed in Annotation, 80 A. L. R. (2d) 5. The elements for which there must be evidentiary support in order to justify giving the emergency instruction are summarized as follows (80 A. L. R. [2d] 14):

"It may be stated broadly, subject to the qualifications hereinafter noted, that to warrant or require the giving of an instruction on the doctrine of sudden emergency * * *, there must be an adequate basis therefor in the pleadings and evidence. More specifically, the evidence should be sufficient to support a finding (1) that the claimed emergency actually or apparently existed; (2) that the perilous situation was not created or contributed to by the person confronted or, as held or stated in many cases, by the tortious act or conduct of such person; (3) that alternative courses of action in meeting the emergency were open to such person, or that there was an opportunity to take some action to avert the threatened casualty; and (4) that the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or a similar situation. Where there is evidence sufficient to support a finding as to the existence of such requisites, and procedural requirements have been complied with, the instruction should, of course, be given."

See, Kane v. Loyd's American Line, Inc. 247 Wis. 145, 19 N. W. (2d) 296, where the court applied the law of this state in holding that the emergency rule cannot be invoked in behalf of a driver whose negligence creates the emergency.

. We have carefully considered the cases relied upon by appellants as controlling the application of the sudden emergency rule. The record indicates that the trial court refused the requested instruction because of appellants' failure to submit any evidence that Huber failed to choose the best or safest course of conduct when confronted with a sudden emergency. Appellants did not suggest that any alternative course of action was open to Huber after the emergency arose. The court apparently acted on the theory that the negligence of Huber, the driver of the tractor-trailer, preceded any situation presenting an emergency.

Plaintiffs do not claim that Huber was negligent when he was confronted with the collision but contend that his negligence occurred prior to the emergency, due to his improper speed, his failure to keep a proper lookout, and his operating of unsafe equipment—which they claim created the emergency. Such facts would also preclude application of the emergency rule.

We hold that since the evidence did not establish facts requiring the requested instruction on the sudden emergency rule, the trial court did not err in refusing to give it.

■ Appellants further contend that the trial court erred in reading Minn. St. 1957, § 169.67, subd. 5, which was in effect when the accident occurred. That statute provided:

"The service brakes upon any motor vehicle or combination of vehicles shall be adequate to stop such vehicle or vehicles when traveling 20 miles per hour within a distance of 30 feet when upon dry asphalt or concrete pavement surface free from loose material where the grade does not exceed one per cent."[1]

Appellants argue that the proof necessary to determine whether this statute was violated was not present, that the necessary elements were

---

[1] The present provision relating to performance standards of brakes, Minn. St. 169.67, subd. 5, contains a much more detailed method for determining their adequacy.

not sufficiently proved, and that the questions and answers shown by the record on that issue were too meager for application of the statute.

Plaintiffs point out that Huber testified categorically that the shortest possible distance within which he could stop under the circumstances was 75 to 80 feet. The record shows that he also testified as follows:

"Q. * * * Did you know, Mr. Huber, as [you] approached the intersection of Lyndale and Broadway Avenue North when you were ten feet away from that intersection and first saw the Jensen automobile that you could not stop your truck before you had gone through that intersection?

* * * * *

"A. Yes."

On the basis of such testimony the jury could properly determine whether appellants violated § 169.67, subd. 5. We see no error in the instruction which informed the jury of this provision.

■ The trial court in instructing the jury referred generally to several items of negligence charged to appellants, including speed in excess of 30 miles per hour; driving faster than was reasonable and prudent under the circumstances; driving the vehicle knowing the brakes to be defective; failing to exercise caution in obedience to a flashing yellow signal; and failing to keep a proper lookout, to yield the right-of-way, and to keep the vehicle under proper control. The court thereafter stated:

"Each defendant having denied the affirmative claims of the other parties to this trial insofar as they relate to such defendant, such affirmative claims have been put in issue. It is upon those issues thus framed that we have received the evidence here in the court room."

Appellants object to the court's enumeration of the various respects in which they were claimed to be negligent. They say there was no request for such a charge and that it was prejudicial to them. We have said more than once that it is fundamental that a charge must be looked at in its entirety and adjudged from the viewpoint of its total impact on the jury. It is the duty of the trial court to define the issues clearly and concisely for the jury. Of course, where there is no evidence to support

a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper. 14 Dunnell, Dig. (3 ed.) § 7174, and cases cited. It is our opinion that the record clearly contains sufficient evidence to support the submission of the specific allegations of negligence enumerated by the court. In Sundeen v. Barthel, 241 Minn. 398, 407, 63 N. W. (2d) 267, 273, we said:

"The instructions of the court may properly point out issues of fact to be decided by the jury. It is of course the duty of the trial court to present to the jury the law applicable to the case in clear and intelligent language so that jurors may readily comprehend it, but a certain latitude as to form and expression of a charge is left to the trial court, as long as the charge correctly states the substance of the law and the determination of the facts is left to the jury, after the jurors have been fully advised as to their distinct and separate responsibilities in that respect."

Appellants argue that Huber's position was similar to that of a motorist driving on a through highway protected by arterial stop signs. They cite Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320, and Dahling v. Damman, 251 Minn. 171, 87 N. W. (2d) 25. This claim ignores Minn. St. 169.06, subd. 7(2), which specifically provides:

"When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past the signals only with caution."

The trial court properly read § 169.06, subd. 7(2), to the jury.

Looking at the evidence in the light most favorable to the verdict, as we are required to do, and construing the court's charge as a whole, we conclude that the charge was complete and free from prejudicial error and that the trial court was justified in denying appellants' alternative motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.