# ARTHUR J. SCHLUKEBIER, INDIVIDUALLY AND d.b.a. SCHLUKEBIER MEAT MARKET, v. JOHN P. LaCLAIR AND OTHERS.

127 N. W. (2d) 693.

April 17, 1964—No. 39,131.

*Rischmiller, Wasche & Hedelson,* for appellant.
*Richard T. Malone,* for respondent Town and Country Motors.
*A. Paul Lommen,* for respondents Tague.

MURPHY, JUSTICE.

This is an appeal from an order of the municipal court of St. Paul denying a motion for a new trial in an action for damages to real estate following a collision between two automobiles. It was agreed by all the parties that plaintiff was entitled to recover a stipulated amount of damages. The only issue to be determined was the liability of the various defendants.

The collision involved an Oldsmobile automobile driven by defendant John P. LaClair which came in contact with a DeSoto automobile owned by defendant Town and Country Motors, Inc., and driven by defendant Marie M. Tague. The DeSoto was stalled, and immediately before the collision was being pushed by the driver's husband, defendant Edward Tague, who was driving a Mercury automobile. By answers to special interrogatories, the jury found defendant John P. LaClair liable and exonerated defendants Marie and Edward Tague. The trial court made its order for entry of judgment in the amount fixed by stipulation, and defendant LaClair appealed. It is his principal contention that the trial court erred in refusing to give certain requested instructions to the jury.

Viewing the evidence in the light most favorable to the verdict, it appears that on the night of November 3, 1960, Town and Country Motors, Inc., had loaned the Tagues a 1953 DeSoto automobile. The motor of this automobile had stalled, and an attempt was made to start it by pushing the automobile with the Tagues' Mercury. The accident occurred at the intersection of Stryker Avenue and Winifred Street in the city of St. Paul at about 7:30 p. m. At the place of the accident Stryker Avenue runs north and south with stop signs at the intersection of Winifred Street, a through thoroughfare. Defendant LaClair, with a passenger in the front seat, was driving north on Stryker Avenue. The Tagues were proceeding west on Winifred Street. They approached the intersection at a speed of about 23 m. p. h. Both the Tagues saw defendant LaClair approach the intersection from the left. As the DeSoto automobile entered the intersection, Mr. Tague, apprehending that LaClair was not going to stop in obedience to the stop sign, applied his brakes. Mrs. Tague made the same observation and applied the brakes on the DeSoto automobile. LaClair entered the intersection without stopping, and as his automobile passed in front of the DeSoto, Mrs. Tague attempted to turn to the left but was unable to avoid the accident. The right front of the DeSoto collided with the rear fender of LaClair's Oldsmobile. Thereafter Mrs. Tague lost control of the DeSoto and proceeded forward a distance of about 60 feet and came to rest against a retaining wall on plaintiff's property, causing the damage which is the subject of this action. The issue of negligence of Town and Country Motors, Inc., was not submitted to the jury, and no objection was taken to this action.

The trial court gave the jury the usual basic instructions, including a clear and concise definition of "negligence," "reasonable care," and "proximate cause" and instructions for their application. The court further correctly instructed the jury on the subject of lookout and the statutes relating to speed restrictions (Minn. St. 169.14, subd. 1), right-of-way (§ 169.01, subd. 45) and rules relating to through highways and highways with stop signs (§ 169.20, subd. 3), vehicle lighting (§ 169.48), and speed limits where no special hazards exist (§ 169.14, subd. 2).

■ Appellant asserts as error the refusal of the trial court to instruct the jury with reference to the so-called reduced-speed statute, Minn. St. 169.14, subd. 3, which provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

It is apparently appellant's position that the presence of the LaClair car at or near the intersection created a special hazard which warranted the reading of this statute to the jury. In considering this objection it is necessary to keep in mind that the court may refuse to give a requested instruction, even though it correctly states the law, where it is without basis in the record and not applicable to the situation disclosed by it; where it assumes facts not supported by the evidence; or where it is included in or fully covered by instructions given. Bruno v. Belmonte, 252 Minn. 497, 90 N. W. (2d) 899; Daugherty v. May Brothers Co. 265 Minn. 310, 121 N. W. (2d) 594; Fenton v. Minneapolis St. Ry. Co. 252 Minn. 75, 89 N. W. (2d) 404; Oldendorf v. Eide, 260 Minn. 458, 110 N. W. (2d) 310; Hammond v. Minneapolis St. Ry. Co. 257 Minn. 330, 101 N. W. (2d) 441; 8 Am. Jur. (2d) Automobiles and Highway Traffic, § 1019; 19 Dunnell, Dig. (3 ed.) § 9774.

The precise question raised by appellant was considered in Neal v. Neal, 238 Minn. 292, 297, 56 N. W. (2d) 673, 677. There we said that in a through highway intersection case, where the speed of the driver on the through highway is lawful and the application of the reduced-speed statute is predicated solely upon the presence of an intersection and "none of the other factors specifically enumerated in § 169.14, subd. 3, are present, to hold that the reduced-speed statute requires the driver on the arterial highway to always reduce his speed when approaching and crossing an intersection protected by stop signs would be both unreasonable and impractical." The Tagues, driving on a through high-

way, had a right to assume that the LaClair automobile approaching the stop sign would stop, until they had an opportunity to observe the contrary. Fickling v. Nassif, 208 Minn. 538, 294 N. W. 848; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

Accordingly the provisions of § 169.14, subd. 3, would not be applicable to the Tagues until such time as they reasonably should have seen that the LaClair car was not going to stop and that danger was imminent unless the speed was reduced. It is apparent from the record here that the Tagues were not aware of the fact that LaClair was not going to stop until it was too late for Mrs. Tague to do anything about it. See, Schleuder v. Soltow, *supra*; Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 65 N. W. (2d) 661.

■ Moreover, it should be noted that the only special hazard in the whole situation was the fact that Mrs. Tague's automobile was being pushed rather than operating under its own power. But any hazard arising from this fact applied equally to all portions of the thoroughfare, not just to the intersection. This condition was covered in the charge by the instruction on § 169.14, subd. 1, which provides in part:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."

It is not error to deny a request for a specific instruction if the substance of it is adequately covered in the charge as a whole. Fenton v. Minneapolis St. Ry. Co. 252 Minn. 75, 89 N. W. (2d) 404.

■ It is next contended by appellant that the trial court erred in denying a requested instruction with respect to the provision of § 169.68 relating to the requirement of sounding an audible warning by horn. That section provides in part as follows:

"* * * The driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn, but shall not otherwise use such horn when upon a highway."

This assignment of error may be disposed of by observing that on the record before us it does not appear that the failure to sound a horn in any way contributed to the accident. If Mrs. Tague had sounded the

horn when it became apparent to her that appellant was going through the intersection without stopping, it would not have prevented the collision. If she had sounded her horn when she applied her brakes, which she said she did when already in the intersection and thus not more than 12 or 15 feet from the point of impact, appellant would not have had time to react and take action to avoid collision. Nadeau v. Melin, 260 Minn. 369, 110 N. W. (2d) 29, is controlling on this point.

■ The next assignment of error relates to the court's refusal to give a requested instruction on § 169.67, subd. 5, relating to performance standards of brakes. Appellant submitted the following request:

"Every motor vehicle at all times and under all conditions of loading, upon application of the service (foot) brake, shall be capable of stopping from a speed of 20 miles per hour in not more than the distance tabulated herein for its classification, such distance to be measured from the point at which movement of the service brake pedal or control begins. Tests for stopping distances shall be made on a substantially level (not to exceed plus or minus one per-cent grade), dry, smooth, hard surface that is free from loose material. Under these conditions the brake system application and braking distance for a passenger vehicle is 25 feet."

The requested instruction was submitted on the theory that the movements of the DeSoto automobile subsequent to the impact indicated that its brakes were defective. The trial court was apparently of the view that the movements of the DeSoto after the collision established nothing as to the condition of the brakes prior thereto. The evidence was that before the impact the brakes were in good order. Prior to the collision the car had been pushed into a filling station where Mrs. Tague brought it to a stop by application of the brakes. At that time they worked properly. We agree with the trial court that the behavior of the DeSoto automobile after the collision and while it was out of control would not, standing alone, constitute evidence of defective brakes. Under the circumstances the reading of the statute, which contains factors relating to standard stopping distance based upon the classification of vehicles and other elements contained in the deceleration table which is a part of subd. 5, would be of no particular help to the jury.

Moreover, such an instruction might mislead the jury and cause them to ignore the evidence relating to the essential issues and permit them to speculate as to facts not supported by the record. At any rate the record contains no evidence which would support a foundation for reading the particular statute in question.

In discussing the propriety of an instruction governing the adequacy of brakes in Lundin v. Stratmoen, 250 Minn. 555, 560, 85 N. W. (2d) 828, 833, we pointed out that, as here, there was no evidence to show that the brakes were defective or inadequate in any respect and said, "It is not error to omit instructions which involve nonexistent issues of fact. See, Forseth v. Duluth-Superior Transit Co. 202 Minn. 447, 278 N. W. 904." See, Nadeau v. Melin, 260 Minn. 369, 110 N. W. (2d) 29.

■ It is next contended by appellant that the court erred in sustaining an objection to his testimony as to the speed of the DeSoto automobile at or prior to the collision. It appears from the record that LaClair did not see the other vehicles until he was at least halfway across the intersection. At that time, he testified, "My passenger, Mr. Hurley, yelled to me to look out and I swung towards him and I seen the one headlight [presumably the Mercury automobile]; and at that same instance I seen the car in front being pushed and I stepped on the gas and the accident was almost instantaneous." He did not see the DeSoto again until it had stopped. Appellant asserts that he should have been allowed to testify as to the speed of the DeSoto automobile on the basis of physical evidence, such as the location of the cars when they came to rest and elements of time and distance. The issue arose on direct examination of the witness LaClair in this way:

"Q. All right. Do you have an opinion as to the width of Stryker at the scene of the accident?

"A. About 35 feet.

"Q. That is at the north end, is that right?

"A. That is at the north end.

"Q. And do you know where Mrs. Tague's car came to rest after the accident?

"A. Yes.

"Q. Did you personally see her car after the accident?

"A. Yes.

"Q. Did you go over and look at her car after the accident?

"A. Yes.

"Q. Would you tell us where her car was resting after the accident?

"A. Her car was resting upon a four foot retaining wall.

"Q. Was the front of the car over the top of the retaining wall?

"A. The front of the car was on top of the retaining wall and the flowerpot that she had taken off was underneath the left running board.

"Q. Now, from your observations of seeing the car, seeing where it came to rest, where your car came to rest, were you able to form an opinion as to the speed of the Tague automobile?

"Mr. Malone [attorney for Town and Country Motors]: Objected to as no proper foundation, Your Honor.

"The Court: Sustained.

\* \* \* \* \*

"Q. Mr. LaClair, do you have an opinion as to what your speed was at the time of the collision?

"A. Yes, between 10 and 12 miles an hour.

"Q. Do you have an opinion as to the length of time that elapsed from the time you saw the front of the car driven by Mrs. Tague and the time it collided with your car, in time?

"(No response.)

"Q. Just answer 'yes' or 'no,' do you have an opinion?

"A. Yes, I do.

"Q. About how much time do you think elapsed?

"A. I believe it was less than a second.

"Q. Well, I will renew the question and ask whether or not you have an opinion as to the speed of the other car?

"Mr. Malone: Same objection.

"Mr. Wasche [attorney for defendant LaClair]: From your observations, from the speed of your car and so forth?

"Mr. Lommen [attorney for defendants Tague]: Same objection.

"The Court: The objections will be sustained."

We gather from the briefs and record before us that the trial court

sustained the objection to the opinion as to the speed because LaClair's counsel sought to elicit that opinion on the basis of physical facts existing after the accident rather than his observations prior to the collision.

A witness need not be an expert to estimate the speed of a moving vehicle, Daugherty v. May Brothers Co. 265 Minn. 310, 121 N. W. (2d) 594; Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27, and we have held on numerous occasions that any person of reasonable intelligence and ordinary experience in life may, without proof of further qualification, express an opinion as to how fast an automobile or other moving object which has come under his observation was going at a particular time. Daly v. Curry, 128 Minn. 449, 151 N. W. 274; Hatley v. Klingsheim, 236 Minn. 370, 53 N. W. (2d) 123; Greenberg v. Holfeltz, 244 Minn. 175, 69 N. W. (2d) 369. There must, however, be some minimum observation by the witness to qualify him to give an opinion. Frank v. Stiegler, 250 Minn. 447, 84 N. W. (2d) 912. It appears from the record here that there was good reason for the trial court to feel that there was no proper foundation laid for the opinion testimony of defendant. His counsel went beyond an attempt to elicit facts within defendant's knowledge. Under the guise of an opinion, he was in fact asking for a deductive conclusion from what he saw and knew. It is apparent that since defendant had no appreciable opportunity for observation, any opinion as to speed would have to be based entirely on facts which were equally available to the jury. We have held that the determination of the sufficiency of the foundation for opinion evidence ordinarily rests within the discretion of the trial court. On the basis of the foundation for the opinion asked in this case, we cannot say that the trial court abused that discretion. Stedman v. Norlin, 243 Minn. 389, 68 N. W. (2d) 393; Daugherty v. May Brothers Co. *supra*; Greenberg v. Holfeltz, *supra*; Hatley v. Klingsheim, *supra*; Aasen v. Aasen, *supra*; Marsh v. Hendriksen, 213 Minn. 500, 7 N. W. (2d) 387.

The other points raised by appellant's brief do not require discussion. Affirmed.